1 | STEPHEN ZELLER, Bar No. 265664
Email Address: szeller@deconsel.com
2 | CASEY JENSEN, Bar No. 263593
Email Address: cjensen@deconsel.com
3 | a member of DeCARLO & SHANLEY,
a Professional Corporation
4 | 533 S. Fremont Avenue, 9th Floor
Los Angeles, California 90071-1706
5 | Telephone (213) 488-4100
Telecopier (213) 488-4180
6 |

7 | Attorneys for Plaintiffs, Carpenters Southwest
Administrative Corporation and Board of Trustees
8 | for the Carpenters Southwest Trusts

9 | UNITED STATES DISTRICT COURT

10 | CENTRAL DISTRICT OF CALIFORNIA

11 |

| | |
|---|---|
| CARPENTERS SOUTHWEST ADMINISTRATIVE CORPORATION, a California non-profit corporation; and BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS, <br><br> Plaintiffs, <br><br> v. <br><br> CESAR HERNANDEZ, individually and doing business as C J R CONSTRUCTION, a sole ownership; and DOES 1 through 10, inclusive, <br><br> Defendants. | CASE NO. <br><br> COMPLAINT FOR DAMAGES FOR FAILURE TO PAY FRINGE BENEFIT CONTRIBUTIONS |

## JURISDICTION

1.    This is a civil action to recover fringe benefit contributions.  This action arises and jurisdiction of the court is founded on section 301 of the Labor-Management Relations Act of 1947, as amended ("LMRA"), 29 U.S.C. § 185a, and Sections 502 and 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132 and 1145.

///

///

**PARTIES AND OTHERS**

2.      CARPENTERS SOUTHWEST ADMINISTRATIVE CORPORATION, a California non-profit corporation ("CSAC"), is a non-profit corporation duly organized and existing under and by virtue of the laws of the State of California.  CSAC's principal place of business is in the County of Los Angeles, State of California.

3.      At all relevant times herein, the BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS were and now are fiduciaries and are duly authorized and acting trustees of those ERISA Trust Funds defined in paragraph six.

4.      CSAC and BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS are also authorized agents to act on behalf of the remaining Funds and entities (defined in paragraph nine) with respect to these delinquencies. CSAC and BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS are sometimes collectively referred to as "PLAINTIFFS."

5.      The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants named herein as DOES 1 through 10, are unknown at this time to PLAINTIFFS.  PLAINTIFFS therefore sue the defendants by such fictitious names, and PLAINTIFFS will amend this complaint to show their true names and capacities when the same has been ascertained.  PLAINTIFFS are informed and believe and thereon allege that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, either through its own conduct, or through the conduct of its agents, servants and/or employees, or in some other manner as yet unknown, and that PLAINTIFFS' damages as herein alleged were proximately caused by those defendants.

6.      At all relevant times, the Southwest Carpenters Health and Welfare Trust, the Southwest Carpenters Pension Trust, the Southwest Carpenters Vacation Trust, and the Southwest Carpenters Training Fund, were and are express trusts which exist pursuant to section 302 of the LMRA, 29 U.S.C. §186, and

1   multiemployer plans within the meaning of section 3 of ERISA, 29 U.S.C. §1002.

2       7.     At all relevant times, the Construction Industry Advancement Fund of

3   Southern California, the Residential Housing Contract Administration Trust Fund,

4   the Contractors-Carpenters Grievance and Arbitration Trust, and the Contract

5   Administration Trust for Carpenter-Management Relations were and are express

6   trusts which exist pursuant to section 302 of the LMRA, 29 U.S.C. §186.

7       8.     At all relevant times, the Carpenters-Contractors Cooperation

8   Committee ("CCCC") and Western States Drywall/Lathing Industry Labor-

9   Management Cooperation Committee, Inc. were and are non-profit California

10   corporations which exist pursuant to section 5(b) of the Labor Management

11   Cooperation Act of 1978, 92 Stat. 2020 (1978), for the purposes set forth in section

12   302(c)(9) of LMRA, 29 U.S.C. § 186(c)(9).

13       9.     CSAC is the administrator of the Southwest Carpenters Health and

14   Welfare Trust, the Southwest Carpenters Pension Trust, the Southwest Carpenters

15   Vacation Trust, and the Southwest Carpenters Training Fund, and assignee of the

16   Construction Industry Advancement Fund of Southern California, the Residential

17   Housing Contract Administration Trust Fund, the Contractors-Carpenters Grievance

18   and Arbitration Trust, the Contract Administration Trust for Carpenter-Management

19   Relations, the Carpenters-Contractors Cooperation Committee, the Southern

20   California Drywall Industry Fund, the Western States Drywall/Lathing Industry

21   Labor-Management Cooperation Committee, Inc., and the Grievance Obligation

22   Trust Fund (collectively, the "PLANS"), and, as such, is a plan fiduciary within the

23   meaning of section 3 of ERISA, 29 U.S.C. §1002.

24      10.    The duly authorized and acting trustees or directors of each of the

25   PLANS have also assigned to CSAC all their right, title and interest in and to any

26   and all amounts due and owing to the respective PLANS by the employer as herein

27   alleged.

28   ///

11.     The Southwest Regional Council of Carpenters and its affiliated local unions ("UNIONS") affiliated with United Brotherhood of Carpenters and Joiners of America, are labor organizations that are parties to the collective bargaining agreements involved.

12.     At all relevant times, employer, CESAR HERNANDEZ, individually and doing business as C J R CONSTRUCTION, a sole ownership; and DOES 1 through 10 ("EMPLOYER"), was and is a contractor engaged in the construction industry within the jurisdiction of the relevant UNIONS.

## CLAIM FOR RELIEF FOR DAMAGES
## FOR FAILURE TO PAY FRINGE
## BENEFIT CONTRIBUTIONS

13.     On or about the date set forth thereon, EMPLOYER made, executed and delivered to the UNION, Single Project Agreement dated November 17, 2014 ("SINGLE PROJECT AGREEMENT") and a Subscriber's Agreement dated November 5, 2015 ("SUBSCRIBER'S AGREEMENT").  True and correct copies are attached hereto, marked as Exhibit "1" and Exhibit "2," and incorporated herein by reference.  The SINGLE PROJECT AGREEMENT and SUBSCRIBER'S AGREEMENT were for the known project as follows:

        a.     The Palms; and

        b.     UCSB Faculty Housing.

14.     The SINGLE PROJECT AGREEMENT binds EMPLOYER to the terms and conditions of the Master Labor Agreement between United General Contractors, Inc. and the United Brotherhood of Carpenters and Joiners of America and the Southern California Conference of Carpenters, dated July 1, 2012, and any renewals or subsequent Master Labor Agreements, and the PLANS' agreements and any amendments, modifications, extensions, supplementations or renewals of the PLANS' agreements (collectively referred to as "AGREEMENTS").  The PLANS are third party beneficiaries of the SINGLE PROJECT AGREEMENT and Master

1   Labor Agreements.

2       15.     The SUBSCRIBER'S AGREEMENT binds EMPLOYER to all of the

3   obligations imposed by the AGREEMENTS and requires EMPLOYER to pay fringe

4   benefits on behalf of EMPLOYER'S apprentices and journeyman. (See Exhibit

5   "2.")

6       16.     The Master Labor Agreement binds EMPLOYER to any renewals or

7   subsequent applicable Master Labor Agreements and the PLANS' AGREEMENTS

8   (collectively, the "AGREEMENTS").

9       17.     The AGREEMENTS require EMPLOYER to pay fringe benefit

10  contributions at the rates set forth therein for every hour worked by employees

11  performing services covered by the AGREEMENTS, and on account of all

12  compensation paid to employees performing services covered by the

13  AGREEMENTS.

14      18.     The AGREEMENTS require EMPLOYER to make the fringe benefit

15  contributions by way of Employers Monthly Reports ("REPORTS") to the PLANS

16  at their place of business in Los Angeles, California, on or before the 25th day of

17  each month following the month during which the hours for which contributions are

18  due were worked or paid.  Further, the AGREEMENTS specifically provide that the

19  venue of an action to recover delinquent fringe benefit contributions shall be in the

20  County of Los Angeles.

21      19.     In acknowledging both that the regular and prompt payment of

22  employer contributions is essential to the maintenance of the PLANS, and the

23  extreme difficulty, if not impracticability, of fixing the actual expense and damage

24  to the PLANS when such monthly contributions are not paid when due, the

25  AGREEMENTS provide that the amount of contractual damages to the PLANS

26  resulting from a failure to pay contributions when due shall be presumed to be the

27  sum of $30.00 per delinquency or 10 percent of the amount of the contributions due,

28  whichever is greater.  This amount shall become due and payable to the CSAC as

1  liquidated damages in addition to the unpaid contributions or contributions paid
2  late.

3    20.    EMPLOYER engaged workers who performed services covered by the
4  AGREEMENTS and who performed labor on works of construction within the
5  jurisdiction of the PLANS' AGREEMENTS undertaken by EMPLOYER during the
6  term of the PLANS' AGREEMENTS.

7    21.    EMPLOYER has failed to pay the fringe benefit contributions in the
8  manner prescribed by the AGREEMENTS, and there is now due and owing the
9  PLANS from EMPLOYER the amounts set forth in Exhibit "3."

10    22.    The AGREEMENTS require EMPLOYER to pay for the expense of
11  auditing EMPLOYER's business records if an audit by the PLANS indicates that
12  EMPLOYER failed to report and pay all contributions.

13    23.    As a result of the failure to pay fringe benefit contributions in the
14  manner prescribed by the AGREEMENTS, EMPLOYER is liable for interest on the
15  unpaid contributions from the first of the month following the date due, at the rate
16  prescribed by the AGREEMENTS.

17    24.    The PLANS have conducted an Audit, which indicates that
18  EMPLOYER failed to report and pay all contributions owed during this time period.
19  A true and correct copy of the Audit Invoice Nos. 21367 and 21367-A (social
20  security numbers redacted), dated March 13, 2017, are attached as Exhibit "4."

21    25.    Subsequent to the audit findings, EMPLOYER made payments on the
22  outstanding audit balance. EMPLOYER's last payment -was on or about October
23  15, 2018 which reduced fringe benefit contributions owed to $5,562.64.

24    26.    As a result of the failure to pay fringe benefit contributions in the
25  manner prescribed by the AGREEMENTS, EMPLOYER is liable for an amount
26  equal to the greater of interest on the unpaid contributions as prescribed by section
27  6621 of the Internal Revenue Code of 1954, 26 U.S.C. §6621, or liquidated
28  damages provided for under the AGREEMENTS.

6

27.     It has been necessary for PLAINTIFFS to engage counsel to bring this action to recover the delinquent fringe benefit contributions.  Pursuant to the AGREEMENTS and section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2), EMPLOYER is liable for reasonable attorneys' fees incurred in litigating this matter.

28.     The PLANS have complied with all conditions precedent.

29.     CSAC has, concurrently with the filing of this complaint, served a copy of the same upon the Secretary of Labor and Secretary of the Treasury.

WHEREFORE, PLAINTIFFS pray for judgment as follows:

**FOR PLAINTIFFS' CLAIM FOR RELIEF FOR**

**DAMAGES FOR FAILURE TO PAY FRINGE**

**BENEFIT CONTRIBUTIONS**

1.   For contributions in the sum of $5,562.64;

2.   For interest and liquidated damages, as provided in the AGREEMENTS;

3.   For audit costs;

4.   For a statutory amount equal to the greater of the interest on unpaid contributions which were owing as of the time of the filing of the complaint herein (at the rate prescribed by law), or liquidated damages as provided in the AGREEMENTS, in an amount to be determined.

5.   For reasonable attorneys' fees;

6.   For costs of this action;

///

///

1    7.    For further contributions according to proof; and

2    8.    For such other and further relief as the court deems proper.

3

4    Dated: April __24__, 2019                    DeCARLO & SHANLEY,
                                                   a Professional Corporation
5

6                                                  By:_____
7                                                       STEPHEN ZELLER
                                                   Attorneys for Plaintiffs,
8                                                  CARPENTERS SOUTHWEST
                                                   ADMINISTRATIVE CORPORATION and
9                                                  BOARD OF TRUSTEES FOR THE
                                                   CARPENTERS SOUTHWEST TRUSTS

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8